McKEIG, Justice.
This case arises out of a district court order dismissing a postconviction petition as moot following the death of the petitioner. The petitioner's former attorneys appealed the district court's order even though their client had died. Because the attorneys, who are not themselves aggrieved parties, do not have standing to seek review of the district court's order, we lack appellate jurisdiction and must dismiss the appeal.
FACTS
In 1989, following a jury trial, Billy Richard Glaze was convicted of multiple counts of first degree-murder during a sexual assault and second-degree intentional murder for the deaths of three Native American women. The three women had each been beaten to death and were left naked and posed with large sticks protruding from their vaginas. The bodies were discovered at different locations around Minneapolis in areas frequented by transients. Due to the amount of debris in each location, investigators collected and tested hundreds of items of potential evidence. DNA testing did not reveal a direct link between Glaze and the crime scenes. At trial, the State introduced evidence that suggested that Glaze had animus towards Native American women and that he fantasized about sexually mutilating them. The State also introduced evidence that Glaze had given his girlfriend a ring belonging to one of the victims and evidence of shoe prints found at that victim's murder scene that were consistent with shoes belonging to Glaze. We affirmed Glaze's convictions on appeal, relying on the "overwhelming evidence of [his] guilt." State v. Glaze , 452 N.W.2d 655, 661 (Minn. 1990).
In 2007, Glaze filed a motion in Hennepin County District Court requesting forensic DNA testing not available at the time of his trial to demonstrate his actual innocence. See Minn. Stat. § 590.01, subd. 1a (2016) (allowing a convicted person to make a motion for DNA testing to demonstrate actual innocence). The motion was granted, and the parties spent the next 7 years litigating the scope of the 2007 order, including what items could be tested and who would conduct the testing.
In June of 2014, Glaze filed an "Amended Petition for Postconviction Relief." Glaze argued that the newly discovered evidence-results from DNA testing-placed *324 an alternative perpetrator, J.A.S., at two of the crime scenes. Glaze requested that his convictions be vacated and that he be granted a new trial. In the alternative, Glaze requested an evidentiary hearing to resolve any factual disputes regarding his newly discovered evidence from the DNA testing. Over the next 18 months, the parties submitted a flurry of motions in which they strenuously disagreed about the significance of the DNA testing. In August of 2015, the district court ordered additional DNA testing and reserved judgment on whether to conduct an evidentiary hearing.
On December 22, 2015, Billy Glaze died. Less than 2 weeks later, the State moved to dismiss Glaze's postconviction petition as moot given Glaze's death. The attorneys who had been representing Glaze in the postconviction proceedings argued that Glaze's petition was not moot because the district court could grant "effectual relief" by "clearing [Glaze's] name-his dying wish." In the alternative, they argued that, even if the petition was technically moot, the "significant public interest exception" to the mootness doctrine applied because the petition was "functionally justiciable" and presented "important public issues of statewide significance."
Before the district court reached a decision on the State's motion to dismiss for mootness, the personal representative of Glaze's estate, Debra Kovats, filed a motion to substitute herself as the petitioner in Glaze's postconviction case. She also moved to amend the caption of the postconviction proceedings as follows: "Billy Richard Glaze,Debra Kovats, Personal Representative of the Estate of Billy Richard Glaze, Petitioner, vs. State of Minnesota, Respondent." The personal representative's attorneys, who were also the attorneys who had been representing Glaze in the postconviction proceedings, argued that substitution was permitted under Minn. R. Civ. P. 25.01.[1] The State opposed the personal representative's request, arguing that the civil rules cannot be used to substitute a party in a postconviction case.
On November 2, 2016, the district court granted the State's motion to dismiss, concluding that the petition was technically moot due to Glaze's death, and that the significant-public-interest exception to the mootness doctrine was not satisfied. The court's order did not address the personal representative's motions for substitution and caption amendment. The attorneys representing the personal representative did not bring this omission to the postconviction court's attention. Instead, the attorneys filed a notice of appeal, which was captioned "Billy Richard Glaze, Petitioner, vs. State of Minnesota, Respondent" and read:
PLEASE TAKE NOTICE that pursuant to Minnesota Rule of Criminal Procedure 29.02 and Minn. Stat. § 590.06 the above-named Petitioner (Appellant) appeals to the Supreme Court of the State of Minnesota and seeks review of the District Court's order dated November 2, 2016, granting Respondent (Appellee) State of Minnesota's motion to dismiss Petitioner's Petition for Post-Conviction relief as moot. Petitioner was convicted in 1989 of first degree murder.
The substance of the appeal to this court concerned the district court's order dismissing Glaze's postconviction petition as moot. The attorneys' initial briefing (in a footnote) addressed the personal representative's unresolved motions for substitution and caption amendment, but did not *325 otherwise discuss the justiciability of the appeal. Before oral argument, we requested supplemental briefing on the issue of whether the appeal could proceed on the merits "in the absence of a substituted party for appellant."[2]
ANALYSIS
Although this case is captioned "Billy Richard Glaze, Appellant, vs. State of Minnesota, Respondent," Billy Glaze did not file this appeal. Indeed, Mr. Glaze died well before the district court dismissed his postconviction petition. It is equally clear that the personal representative of the Estate of Billy Glaze did not file this appeal because she is neither listed in the caption nor mentioned in the body of the notice of appeal. Instead, this appeal was filed by the attorneys who had been representing Glaze before his death. We conclude that these attorneys, whose attorney-client relationship with Glaze terminated on his death and who are not aggrieved parties themselves, do not have standing to pursue Glaze's postconviction claims on appeal. Thus, we lack appellate jurisdiction and must dismiss the appeal.
Jurisdiction is fundamental to the exercise of judicial power. See In re Application of the Senate , 10 Minn. 78, 81 (1865). An essential element of jurisdiction is standing of the parties, because the absence of a party's standing "bars consideration of the claim by the court." In re Custody of D.T.R. , 796 N.W.2d 509, 512 (Minn. 2011).[3] Standing cannot be waived by the parties, see United States v. Hays , 515 U.S. 737, 742, 115 S.Ct. 2431, 132 L.Ed.2d 635 (1995), and must be maintained at each stage of litigation, including on appeal, D.T.R. , 796 N.W.2d at 512. Accordingly, we examine standing regardless of whether it was raised by the parties, and we determine the existence of standing de novo. League of Women Voters Minn. v. Ritchie , 819 N.W.2d 636, 645 n.7 (Minn. 2012) ; D.T.R. , 796 N.W.2d at 512.
"Standing is the requirement that a party has a sufficient stake in a justiciable controversy[.]" State by Humphrey v. Philip Morris Inc. , 551 N.W.2d 490, 493 (Minn. 1996). To have standing on appeal, a party must be "aggrieved" by the underlying adjudication. D.T.R. , 796 N.W.2d at 513 (discussing the requirements of Minn. R. Civ. App. P. 103.03 ). A person with a "direct interest in the litigation" is aggrieved when his or her "personal *326 right" was "injuriously affected by the underlying adjudication." Id. (citation omitted) (internal quotation marks omitted).
Here, the attorneys who filed the notice of appeal do not represent any aggrieved party before this court. At the moment Billy Glaze died, the attorneys ceased to represent him, and from that point forward they lacked authority to act on his behalf.[4] See Pautz v.Am. Ins. Co. , 268 Minn. 241, 128 N.W.2d 731, 738 (1964) (explaining that the attorney's authority to act for the plaintiff had been terminated by the death of the plaintiff); Bergum v. Palmborg , 239 Minn. 569, 58 N.W.2d 722, 722 (1953) (same); see also Brass v. State , 129 Nev. 527, 306 P.3d 393, 394 (2013) ("Generally, counsel cannot act on a deceased client's behalf."); Hart v. Blabey , 286 N.Y. 75, 35 N.E.2d 657, 658 (1941) (explaining that the authority of the attorney who had been representing the plaintiff "ceased upon [her] death," and therefore, the attorney could not file a notice of appeal in her behalf). Moreover, the attorneys do not claim, nor does there appear to be any legal authority for a claim, that they are aggrieved parties themselves. Cf. State ex rel. Nordin v. Probate Court of Hennepin Cty. , 200 Minn. 167, 273 N.W. 636, 637 (1937) (explaining that attorneys are not parties to, have no interest in, and are not entitled to review in litigation in which they appear "solely as the representative of the client"). In sum, no "Appellant" with standing has appeared before us in this appeal.
The attorneys urge us to consider the "merits" of this appeal-whether Glaze's postconviction petition is moot-even though no aggrieved party is before us. In support of this argument, the attorneys cite *327 Witthuhn v. Durbahn , 279 Minn. 437, 157 N.W.2d 360 (1968). In Witthuhn , the district court dismissed a negligence action after the original plaintiff died. Id. at 361. The special administratrix of plaintiff's estate appealed the dismissal in a case captioned "Eraine R. Witthuhn, Special Administratrix of Estate of Everett Witthuhn, Deceased, Appellant, v. Merle C. Durbahn et al., Respondents." Id. at 360. Although the special administratrix failed to make a motion to substitute before the district court, we explained that the absence of a motion to substitute "does not, at this stage of the proceedings, justify the [district court's] order for dismissal" because Rule 25.01"does not limit the time within which the motion to substitute must be made." Id. at 361 ; see also Minn. R. Civ. P. 25.01. In other words, if we had reversed the district court's order for dismissal, nothing would have prevented the special administratrix from substituting herself as plaintiff on remand.[5]
Our conclusion in Witthuhn does not resolve the justiciability issue presented by this appeal. There was no question in Witthuhn that the notice of appeal was filed by an aggrieved party, namely the special administratrix. Here, the notice of appeal was filed by attorneys who do not themselves have standing to seek review of the district court order dismissing Glaze's postconviction petition. Thus, we lack appellate jurisdiction in this case and must dismiss the appeal.
CONCLUSION
For the foregoing reason, we dismiss this appeal as nonjusticiable.
Appeal dismissed.

Rule 25.01 provides in part that "[i]f a party dies and the claim is not extinguished or barred, the court may order substitution of the proper parties."

Without discussing the issue of whether a claim for postconviction relief is extinguished or barred by a party's death, the attorneys who filed the notice of appeal argue that we could substitute the personal representative as a party in this case under Minn. R. Civ. P. 25.01 (providing in part that "[i]f a party dies and the claim is not extinguished or barred, the court may order substitution of the proper parties"). Because we conclude that an appellate court's authority to substitute a party following the death of a party is controlled by Minn. R. Civ. App. P. 143.02, not Minn. R. Civ. P. 25.01, we need not decide whether a claim for postconviction relief is extinguished or barred by a party's death. Minn. R. Civ. App. P. 143.02 provides that: "If a party entitled to appeal dies before filing a notice of appeal, the notice of appeal may be filed by the decedent's personal representative or , if there is no personal representative, by the attorney of record within the time prescribed by these rules." (Emphasis added). The filing of a notice of appeal by the attorneys who had been representing Glaze in the postconviction proceedings was not authorized by Rule 143.02 because there is a personal representative of the estate of Billy Glaze. Moreover, because the personal representative failed to file a notice of appeal within the time prescribed by the rules, the provision of Rule 143.02 that allows party substitution in the appellate courts does not apply.

This distinguishes standing from mootness, which is a "flexible discretionary doctrine, not a mechanical rule that is invoked automatically." Kahn v. Griffin , 701 N.W.2d 815, 821 (Minn. 2005).

Our conclusion that Glaze's death terminated the attorneys' authority to act on his behalf is not inconsistent with In re Guardianship of Tschumy , 853 N.W.2d 728 (Minn. 2014). In that case, the district court appointed a guardian for Mr. Tschumy. Id. at 731. When a third party questioned whether the letter of general guardianship allowed the guardian to direct removal from life support, the district court appointed an attorney "to represent Tschumy, investigate what Tschumy would want, and make a recommendation to the court." Id. at 732. Although the district court concluded the letter of general guardianship did not grant the guardian unrestricted authority to direct the removal of life support, the court authorized the removal of life support and Mr. Tschumy died soon thereafter. Id. at 732-33. Before our court, the primary jurisdictional issue was whether the guardian's legal interest in litigation expired upon the death of Mr. Tschumy. Id. at 734. With regard to the attorney the district court appointed to represent Mr. Tschumy, we expressed "no opinion on the attorney's authority or on the details of the process by which the case reached us." Id. at 733 n.3.
This case also differs from State v. Burrell , 837 N.W.2d 459 (Minn. 2013), where we held that the defendant's death pending resolution of his appeal of his conviction abated the conviction. Id. at 470. Courts that have considered whether counsel may move for abatement under such circumstances have allowed motions for abatement ab initio under several different theories. See, e.g. , United States v. Christopher , 273 F.3d 294, 296 n.1 (3d Cir. 2001) (rejecting the government's argument that the deceased defendant's attorney did not have authority to request that the conviction and order of restitution be abated, explaining that the defendant's personal representative had been substituted as appellant under Fed. R. App. P. 43(a)(1) ); United States v. Crawford , 36 C.M.R. 697, 702 (A.B.R. 1966) (acknowledging that Crawford's death terminated his attorney-client relationship with appellate counsel, but treating appellate counsel as an amicus curiae on the issue of whether the appeal and prosecution should be abated ab initio ); State v. Korsen , 141 Idaho 445, 111 P.3d 130, 132-33 (2005) (concluding that party substitution was not required when "the attorney for the deceased criminal appellant ... merely wishes to conclude the criminal proceeding" through a motion for abatement ab initio ).

Notably, we ultimately held in Witthuhn that the district court properly dismissed the negligence action because the claim did not survive the death of the original plaintiff. 157 N.W.2d at 362 (citing Minn. Stat. § 573.01 (1967) ).